UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW WARCIAK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 16-cv-5731 |
| v. | Honorable Thomas M. Durkin |
| NIKIL, INC., a Delaware corporation, | |
| Defendant. | |

**DEFENDANT NIKIL, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Matthew Warciak claims to have received a text message inviting him to download and try Down to Lunch, a popular social mobile application developed and operated by Defendant Nikil, Inc. ("Nikil") that helps users easily meet in person for events and other activities. Plaintiff alleges, in sum, that although the text message he received stated on its face that it had been sent by one of Plaintiff's telephone contacts, the message was actually sent by Nikil, using automated dialing technology and without Plaintiff's consent. Based on those allegations, Plaintiff filed this purported class action against Nikil for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA").

Both of Plaintiff's claims fail as a matter of law. Plaintiff admits, as he must, that invitational text messages can be sent using Down to Lunch only at the express direction of the app user, who must take multiple affirmative steps to send an invitation, including by pressing a prominent and clearly labeled "Invite" button for each contact he or she wants to invite. As explained below, that admission is fatal to each of Plaintiff's claims, and the Court should therefore dismiss this lawsuit in its entirety with prejudice.

First, because Plaintiff admits that the app user must specifically direct the app to "invite" the user's contacts individually, Plaintiff cannot establish that Nikil is the "maker" or "initiator" of the invitations, as required to state a TCPA claim. In a July 2015 Order (the "2015 TCPA Order"),[1] the Federal Communications Commission ("FCC") unequivocally ruled that where an app user must take affirmative steps to send an invitational text message using the app, the user, and ***not*** the app provider, is the "maker" or "initiator" of that message for purposes of the TCPA.

---

[1] *See* Declaratory Ruling and Order, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) (Ex. B).

1

The 2015 TCPA Order is binding on this Court, and it squarely forecloses Plaintiff's TCPA claim. Plaintiff attempts to avoid that inescapable conclusion by asserting that Down to Lunch users do not know that pressing "invite" next to one of their contacts' names will cause that person to be sent an invitational text message. But those makeweight allegations are belied by Plaintiff's well-pleaded factual allegations and the screenshots of the Down to Lunch invitation flow reproduced and incorporated by reference in the Amended Complaint.

Second, Plaintiff's admission that affirmative user direction is required for each and every invitational text message sent using Down to Lunch also precludes Plaintiff from establishing that the message he received was sent using an "automatic telephone dialing system" (or "ATDS"), another required element of Plaintiff's TCPA claim. To plead the use of an ATDS, a plaintiff must allege facts to suggest that the message was sent using equipment with the capacity to store or produce randomly or sequentially generated telephone numbers. Plaintiff alleges no facts that would support such an inference. To the contrary, Plaintiff's allegations establish that invitational text messages can be sent through Down to Lunch *only* to individual friends' telephone numbers that are in a Down to Lunch user's contact list, and *only* at the user's direction. Plaintiff's TCPA claim thus fails for that additional, independent reason.

Third, Plaintiff's ICFA claim, which relies entirely on theory that Nikil violated the TCPA, fails because Plaintiff cannot allege an actionable unfair or deceptive practice.

Plaintiff has already once amended his complaint, and further amendment cannot cure the defects of the Amended Complaint. Accordingly, dismissal should be with prejudice.

**BACKGROUND**

Down To Lunch is an app created by two college friends (Nikil and Joe) from their San Francisco apartment, to help them see which of their friends was available to hang out. *See*

Amended Complaint ("AC") ¶ 1 n.1. They initially created Down to Lunch just for their own friends, but the free Down to Lunch app, which allows users to easily connect with friends by notifying others that the user is nearby and available for a specific social activity (*e.g.*, getting lunch, going to the gym, studying), quickly grew in popularity. *Id.* ¶¶ 1 n.1, 11. Because Down to Lunch can be used only to connect with other app users, Down to Lunch is helpful to a user only if at least some of that user's friends also use Down to Lunch. Consequently, Down to Lunch (like many smartphone applications) allows its users to send text messages inviting selected friends from their contact lists to download and try the app. *See id.* ¶¶ 15-21.

Plaintiff Matthew Warciak claims to have received such an invitation on April 21, 2016. AC ¶ 36. The message identified both Plaintiff and the sender by name,[2] explained that the sender has "personally invited you to the Down to Lunch app so you both can hang out together," and included a link to where Plaintiff could download the app. *Id.* fig. 20.

The very next day, April 22, 2016 (just after Down to Lunch was featured in the *New York Times*), Plaintiff filed a class action complaint against Nikil in the Circuit Court of Cook County, alleging claims under the TCPA and the ICFA. Nikil properly removed the action to this Court on May 31, 2016. *See* Dkt. No. 1. After discussions between the parties, the parties stipulated to the filing of Plaintiff's Amended Complaint. *See* Dkt. No. 17. Plaintiff filed the Amended Complaint on June 29, 2016. *See* Dkt. No. 20.

Plaintiff's Amended Complaint includes considerable detail relevant to this motion about the process through which Down to Lunch users may choose to invite their friends and contacts to download the app, including numerous screenshots of the Down to Lunch invitation flow. *See*

---

[2] Plaintiff has, curiously, redacted his contact's name from the Amended Complaint. *See* AC ¶ 36 & fig. 20. Plaintiff does not, however, allege or claim that the person identified as the sender of the message is not one of his friends or contacts.

AC ¶¶ 16-22 (those screenshots are reproduced in their entirety as Exhibit A, for the Court's convenience). Plaintiff alleges that when a user first downloads and opens Down to Lunch, the app informs the user that two separate permissions are required in order to use Down to Lunch — the user must both (1) enable the "Find Friends" function, and (2) grant the app permission to send the user in-app notifications. *Id.* ¶ 16 & fig. 1.

Below the "Find Friends" button, the app confirms that enabling the "Find Friends" feature "will not text anyone." AC ¶ 16 & fig. 1. If the user clicks "Find Friends," a pop-up window appears requesting permission for the Down to Lunch app to access the user's contacts. *Id.* ¶ 17 & fig. 2. If the user grants the app access to his contacts, the app then tells the user exactly which of his friends are already using Down to Lunch (which the app is able to determine because users must provide their mobile phone number as part of the initial registration process). *See id.* ¶ 18 & fig. 3 ("2 Friends Using DTL!"; listing friends' names).

After the user completes the "Find Friends" process, he may then push the "Enable Notifications" button, which prompts the app to ask the user to give Down to Lunch permission to send push notifications to alert the user when his friends want to get together. *See* AC ¶ 19.

Once the registration process is complete, Down to Lunch gives the user the option of inviting additional contacts to download the app. The app displays a screen that reads, "Get more friends to eat with!" AC ¶ 21 & fig. 7. That screen shows the number of the user's contacts who are already using Down to Lunch, followed by the phrase "invite contacts!," and it informs the user that he will receive points (redeemable for stickers or a t-shirt) for each invited friend who joins Down to Lunch. *Id.* At the bottom of that screen, the app displays the name of one of the user's contacts (*e.g.*, James) and gives the user the option to "Invite James!" *See id.* The user may then do any of three things: he can (1) invite James to download and join Down to

4

Lunch by pressing a button labeled "Invite"; (2) press a button labeled "Skip," after which the app will display another of the user's contacts; or (3) exit the "invite contacts" screen by pressing the large "X" in the upper left corner of the screen. *See id.* If the user presses the "invite" button, a single text message is sent to the selected contact, stating that the user has invited him or her to sign up for Down to Lunch. *See id.* ¶¶ 23-24 & fig. 9. Plaintiff's Amended Complaint does not allege that invitational text messages can be sent through Down to Lunch without the user's express direction. Nor does Plaintiff allege that invitational messages can be sent to anyone other than friends in a user's contact list that are specifically selected by the user.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient well-pleaded facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555 (complaint must allege facts that, when considered true, raise the right to relief "above the speculative level"). As the Supreme Court has repeatedly made clear, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In ruling on a motion to dismiss, a court must assume the truth of all well-pleaded factual allegations, but it need not accept as true any conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See id*. at 678. In addition, the court does not credit allegations that are contradicted by documents or materials attached to or incorporated by reference in the complaint. *See, e.g.*, *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."); *Lansing v. Carroll*, No. 11 CV 4153, 2015

WL 3962345, *4 (N.D. Ill. June 29, 2015).

I.         **PLAINTIFF CANNOT STATE A TCPA CLAIM.**

As relevant to this lawsuit, the TCPA provides that a person may not "make any call" to a cellular phone using an "automatic telephone dialing system" without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). As explained in detail below, Plaintiff's TCPA claim fails as a matter of law because Plaintiff does not (and cannot) allege facts sufficient to plausibly suggest that (1) Nikil made any call (*i.e.*, sent the text message alleged in the Complaint); and (2) the text message Plaintiff received was sent using an "automatic telephone dialing system," as required for liability under the TCPA.

      **A.**       **Plaintiff Cannot Sufficiently Allege that Nikil Made a Call for purposes of the TCPA.**

            **1.**       **The 2015 TCPA Order Precludes TCPA Liability for User-Directed Text Messages Sent through Smartphone Apps.**

It is axiomatic that a TCPA plaintiff must sufficiently plead, and ultimately prove, that the defendant made the challenged call or sent the challenged text message. *See* 47 U.S.C. § 227(b)(1)(A); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (TCPA liability attaches only if defendant made a call); *Smith v. Securus Techs., Inc.*, No. 15-cv-550 (SRN/HB), 2015 WL 4636696, *3 (D. Minn. Aug. 4, 2015) (same).

As noted above, in July 2015, the FCC issued its 2015 TCPA Order, an omnibus ruling that addressed some 21 petitions and requests seeking clarification or interpretation of various provisions of the TCPA. Among other things, the 2015 TCPA Order directly addressed the issue of who "makes" or "initiates" an invitational text message sent using a smartphone application. The FCC explained that, to determine who "makes" or "initiates" a call for purposes of the TCPA, courts consider: (1) who took the steps necessary to physically place the call; and (2) whether another party was so involved in placing the call that the other party should be deemed

to have initiated it. *See* 2015 TCPA Order ¶¶ 30, 34-37. Applying those factors to the specific situation of text message invitations sent through smartphone apps, the FCC ruled that, where an app user must take affirmative steps to cause an invitational message to be sent using the app, the user, and not the app provider, "makes" the call. *See id.* ¶¶ 36-37. By contrast, if the app sends text messages automatically to the user's contacts without affirmative direction from the user, then the app provider may be considered the sender of the message. *Id.* ¶¶ 34-35.

In so ruling, the FCC drew an instructive distinction between two of the petitions pending before it, one of which concerned an app that automatically sent text message invitations without affirmative direction by users, and one of which involved an app that required users to tap a "send" button to send the invitations. Evaluating the petition of TextMe, an app that required users to take the affirmative steps of selecting contacts and instructing the app to send the invitations, the FCC ruled that the app users, rather than TextMe, initiated the invitational text messages. 2015 TCPA Order ¶ 37. The FCC noted that the TextMe app required users to (1) tap an "invite your friends" button; (2) choose whether to invite all friends or select friends individually; and (3) affirmatively send the invitation by hitting another button. *Id.* The FCC then explained that "the app user's actions and choices" involved in sending invitations through the TextMe app establish "that he or she is so involved in the making of the call as to be deemed the initiator of the call." *Id.* TextMe, on the other hand, "merely had some role, however minor, in the causal chain that results in the making of a telephone call," and therefore did not "make" any call for purposes of the TCPA. *Id.* The FCC further ruled that TextMe's "control of the content of the invitational text message" did not make TextMe the "maker" of the message, in light of the user direction required to send the invitational messages. *Id.*

By contrast, the FCC ruled that Glide, another app developer, was responsible for

7

"making" calls because it *automatically* sent text message invitations to all of a user's contacts *unless* the user opted out. 2015 TCPA Order ¶¶ 34-35. In those circumstances, the FCC declared, the app provider should be considered the sender of the message, because "the app user plays no discernible role" in sending the messages. *Id.* ¶¶ 34-35.

The 2015 TCPA Order is binding on district courts under the Hobbs Act,[3] and it conclusively sets the standard applicable to determine whether an app provider "makes" or "initiates" invitational messages sent using its app. In the short time since the FCC issued the 2015 TCPA Order, courts have consistently rejected attempts to impose TCPA liability on app providers for invitational text messages. *See Wright v. Lyft, Inc.*, No. 2:14-CV-00421 MJP, slip op. at 4 (W.D. Wash. Apr. 15, 2016) (Ex. C) ("[The 2015 TCPA Order] makes it clear: 'invitational' messages sent at the behest of existing users of an app or system do not fall within the ambit of the TCPA."); *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, *3-5 (N.D. Cal. Sept. 9, 2015) (granting motion to dismiss TCPA claim where plaintiff acknowledged that invitational messages were sent through app only at user's affirmative direction); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, *3-5 (N.D. Cal. Aug. 24, 2015) (same; granting summary judgment).

### 2. Plaintiff's Allegations Establish that Text Messages Sent through Down to Lunch Are User-Directed.

Under the standard set by the 2015 TCPA Order, the allegations of Plaintiff's Amended Complaint, and particularly the included screenshots of the Down to Lunch invitation flow, foreclose any claim that Nikil "makes" or "initiates" Down to Lunch invitational text messages. As Plaintiff admits, invitational text messages can be sent using Down to Lunch *only* if the app user, among other steps, affirmatively chooses the option of sending an invitation to a specific

---

[3] *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010).

8

individual by pressing an "Invite" button displayed below that person's name. *See* Background, *supra*; AC ¶¶ 16-22. As the FCC ruled with respect to TextMe, and as the courts in *McKenna*, *Wright*, and *Huricks* also held, that individualized decision making process renders the user "so involved in the making of the call as to be deemed the initiator of the call" (2015 TCPA Order ¶ 37), and it precludes Plaintiff's TCPA claim as a matter of law.[4]

Plaintiff does not dispute that a Down to Lunch user must affirmatively choose to "invite" a specific individual contact before an invitational text message can be sent to that person. Instead, Plaintiff attempts (unsuccessfully) to plead around that fatal concession. Plaintiff first alleges that Nikil, and not the end user, should be considered the sender of the invitational text messages because it controls the content of the invitational text messages. AC ¶¶ 24-26. In addition, Plaintiff asserts, in conclusory fashion, that the Down to Lunch invitation flow is designed to "trick" users into sending invitational text messages to their contacts by "misleading" them into thinking that they are merely sending in-app "friend requests" to other Down to Lunch users. *Id.* ¶¶ 5, 27. Finally, Plaintiff also complains that, even if users know that they are sending invitations to their telephone contacts, Down to Lunch does not inform users that the invitations will be sent via telephone, and the app supposedly assures users that it will not send any text messages. *Id.* ¶¶ 4, 28.

Each of those arguments fails. <u>First</u>, in the 2015 TCPA Order, the FCC expressly rejected the argument that an app provider's control over the content of invitational text

---

[4] In fact, the Down to Lunch invitation process is, if anything, even more individualized than the TextMe process considered by the FCC and the process considered by the court in *Wright*. In both of those cases, an app user could choose to send an invitational text message to all of their contacts at once by choosing to "select all" contacts. *See* 2015 TCPA Order ¶ 36; *Wright*, slip op. at 3. Here, by contrast, Plaintiff does not allege that Down to Lunch permits its users to send an invitational message to multiple contacts at once. To the contrary, Plaintiff affirmatively alleges that the user must "invite" each contact individually. *See* AC ¶¶ 21-22.

messages renders it the "maker" or "initiator" of such messages. Rather, the FCC ruled that where, as here, the app user must affirmatively direct that an invitational text message be sent, the user is considered the "maker" of the call, *even if the app provider controls the content of the text message*. *See* 2015 TCPA Order ¶ 37 (noting that "it is clear that TextMe, and not the app user, controls the content of the invitational text message," but finding that TextMe did not "make" or "initiate" invitational text messages sent using smartphone app where messages required affirmative user direction); *see Huricks*, 2015 WL 5013299 at *3-4 (holding same).

Second, Plaintiff alleges no *facts* to support the bald supposition that Down to Lunch misleads users into thinking that they are sending in-app "friend requests," and the screenshots of the Down to Lunch invitation flow reproduced in Plaintiff's Amended Complaint belie any such claim. To begin with, the Down to Lunch invitation screen shown in the Amended Complaint prominently states that users may "invite contacts," and that users will receive points if invited friends *join* Down to Lunch. AC ¶ 21 & fig. 7 ("+50 🏆 "for friend joining!"). Thus, the invitation screen itself makes clear that the invitations are directed to contacts who are *not* already Down to Lunch users. The Court need not, and should not, credit Plaintiff's unsupported contrary allegations. *See Lansing*, 2015 WL 3962345, at *4.

In addition, the sequence of the Down to Lunch invitation flow also directly contradicts Plaintiff's theory. As Plaintiff acknowledges, before a user is given the option to invite his contacts to sign up for Down to Lunch, the app (with the user's permission) accesses the user's contacts and automatically connects the user with, and shows the names of, any of his contacts who are already using Down to Lunch. *See* AC ¶ 18 ("Once the App has access to the consumer's contacts, it may pop up another screen showing the number of "Friends" that the consumer has in [sic] Down to Lunch social network . . . ."); *id.* fig. 3 ("2 Friends Using DTL!";

10

listing names). In other words, according to Plaintiff's own allegations, a Down to Lunch user is not even presented with the option of sending invitations to any of his contacts until *after* the user completes the "Find Friends" step and *after* Down to Lunch tells the user exactly which of his contacts are already using Down to Lunch. *See id.* Given that context, Plaintiff's suggestion that Down to Lunch users mistakenly believe that the app's invitation process involves sending in-app messages to other existing Down to Lunch users is wholly implausible.

Third, Plaintiff's assertion that the Down to Lunch invitation screen does not inform users that invitations will be delivered via text message fares no better. In *Wright*, a putative TCPA class action against ride-sharing company Lyft, the court recently considered, and squarely rejected, that very argument:

> Plaintiff attempts to distinguish the TextMe petition on the grounds that the TextMe system told the app users that an invitational *text message* would be sent, whereas 'Lyft did not tell users whether an 'invite' would be sent by U.S. Mail, email, a personal telephone call, or some other method.' The Court finds this distinction of questionable materiality and the speculation/allegation definitely implausible . . . .

*Wright*, slip op. at 5. Just as in *Wright*, Plaintiff's purely speculative suggestion that Down to Lunch users might not know that invitations will be delivered to their contacts' telephone numbers fails to state a claim.[5]

Plaintiff attempts to bolster that theory by claiming that Down to Lunch falsely promises users that it "will not text anyone" (*see* AC ¶¶ 4, 28-29), but that argument strains credulity. As the screenshots reproduced in Plaintiff's Amended Complaint make clear, the phrase "will not text anyone" appears underneath the "Find Friends" button at the beginning of the Down to

---

[5] Indeed, if, as Plaintiff speculates, text message invitations sent by Down to Lunch users have been a driver of Down to Lunch's growth (*see* AC ¶ 29), then the app's users (many of whom would themselves have received a text message from a contact inviting them to download the app) would necessarily be aware that any invitations they send to their contacts would also be delivered via text message.

11

Lunch user flow. *See* AC ¶ 16 fig. 1. Plaintiff's proffered interpretation of that statement — that it is a representation that Down to Lunch does not have a text message invitation function — is unsupportable. On its face, the challenged statement indicates, correctly, that enabling the "Find Friends" function will not cause users to send a text message to any of their contacts; it neither states nor implies that user-directed invitations will not be sent via text message. *See id.*

In sum, under the FCC's 2015 TCPA Order, Nikil cannot be considered the "maker" or "initiator" of invitational text messages sent using Down to Lunch. Plaintiff's TCPA claim should therefore be dismissed.

### B. Plaintiff Has Not Sufficiently Alleged that the Message He Received Was Sent Using an ATDS.

Because Plaintiff's failure to allege that Nikil "makes" or "initiates" Down to Lunch invitational text messages is itself fatal to Plaintiff's TCPA claim, the Court need not consider whether Plaintiff has sufficiently alleged that the message he received was sent using an ATDS. Should the Court reach that issue, however, Plaintiff's failure to allege the use of an ATDS provides an additional, independent basis for dismissal.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To allege the use of an ATDS, a plaintiff cannot merely parrot the statutory definition of an ATDS; rather, a plaintiff must plead additional, specific factual content supporting the conclusion that an ATDS was used. *See Ananthapadmanabhan v. BSI Fin. Servs.*, Inc., No. 15 C 5412, 2015 WL 8780579, *4 (N.D. Ill. Dec. 15, 2015); *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, *2 (N.D. Ill. July 9, 2015). In addition, courts have repeatedly held that a system cannot qualify as an ATDS where it can dial numbers only in response to direct human intervention. *See, e.g., Luna v. Shac,*

*LLC*, 122 F. Supp. 3d 936, 940-41 (N.D. Cal. 2015) (holding that accused dialing system was not an ATDS because messages could be sent only with human intervention); *Derby v. AOL, Inc.*, No. 5:15-cv-00452-RMW, 2015 WL 5316403, *4 (N.D. Cal. Sept. 11, 2015) (granting motion to dismiss where plaintiff did not allege that system could operate without human intervention); *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014).

Here, Plaintiff alleges, in conclusory fashion, that "the hardware and software used by Defendant has the capacity to store, produce, and dial random or sequential numbers *en masse*, in an automated fashion without human intervention." AC ¶ 32. Such speculative allegations are insufficient. *See Oliver v. DirecTV, LLC*, No. 14-CV-7794, 2015 WL 1727251, *3 (N.D. Ill. Apr. 13, 2015) (dismissing TCPA claims because the allegation "do not suggest beyond the 'speculative level' that Defendant actually used an ATDS"). More important, as explained above, Plaintiff's factual allegations concerning the Down to Lunch invitation process directly contradict Plaintiff's conclusory assertion that Down to Lunch can dial numbers "without human intervention." The Amended Complaint makes it clear that Down to Lunch can process and send an invitational text message ***only*** in response to the user's affirmative direction that an invitation be sent, and then ***only*** to the telephone number of the specific selected contact from a Down to Lunch user's contact list. *See* AC ¶ 23 ("Defendant programmed its Down to Lunch App to transmit the phone numbers of the 'Invited' 'Friend' to Defendant's servers."); *id.* ¶ 26 (acknowledging that message can be sent only after user "press[es] the 'Invite' button"). Because Plaintiff's allegations establish that Down to Lunch can dial telephone numbers only in response to direct human intervention, Plaintiff cannot state a claim that the message he received was sent using an ATDS. *See, e.g.*, *McKenna*, 2015 WL 5264750, at *3-4; *Derby*, 2015 WL 5316403, at*4.

## II. PLAINTIFF CANNOT STATE A CLAIM UNDER THE ICFA.

To state an actionable claim under the Illinois Consumer Fraud Act, a plaintiff must allege, among other things, that he was injured as a result of an unfair or deceptive act or practice committed by the defendant. *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 417 (2002). To determine whether a defendant's alleged action amounts to an unfair practice within the meaning of the ICFA, Illinois courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id.* at 417–18; *see also Sturdy v. Medtrak Educ. Servs. LLC*, No. 13-CV-3350, 2014 WL 2727200, *3 (C.D. Ill. June 16, 2014).

Here, Plaintiff's ICFA claim relies almost entirely on Plaintiff's contention that Down to Lunch invitational text messages violate the TCPA. *See* AC ¶ 61 ("Nikil's unwanted and unsolicited promotional text messages are contrary to public policy because they are unlawful under the TCPA.") Because, as explained above, Plaintiff's TCPA claim fails as a matter of law (*see* Section I, *supra*), Plaintiff's ICFA also necessarily fails. *See, e.g.*, *Grind Lap Servs., Inc. v. UBM LLC*, No. 14 C 6448, 2015 WL 6955484, *4 (N.D. Ill. Nov. 10, 2015) ("[W]ithout a TCPA violation, plaintiff's ICFA claim also fails because as a matter of law defendant did not engage in a deceptive or unfair practice by sending the fax.").[6]

In addition, even if Plaintiff could state an actionable TCPA claim based on his receipt of an invitational text message, his ICFA claim would still fail, because an unwanted invitational text message is not "oppressive" and does not cause "substantial injury" as a matter of law. *See Sturdy*, 2014 WL 2727200, at *3 (granting motion to dismiss ICFA claim, even where complaint

---

[6] Plaintiff also vaguely alleges that Nikil's text messaging practices are "deceptive" (AC ¶ 60), but that bare allegation cannot support an ICFA claim, and Plaintiff has not alleged that anything in the text message he received was "deceptive."

14

stated actionable TCPA claim; finding, *inter alia*, that unsolicited fax advertisement was not "oppressive" and "cannot be said to cause significant harm"); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 617 (N.D. Ill. 2009) (dismissing ICFA claim; finding that even aggregate harm to putative class of thousands of consumers from unsolicited fax was not "substantial injury").

### III.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

A complaint should be dismissed with prejudice where further amendment cannot cure the complaint's deficiencies. *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012). In this case, Plaintiff has already once amended his complaint, and the affirmative allegations of Plaintiff's Amended Complaint squarely foreclose any claim for relief. Further amendment would be futile, and dismissal should therefore be with prejudice. *See Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-CV-07388, 2013 WL 4552866, *5 (N.D. Ill. Aug. 27, 2013) (finding that amendment would be futile where complaint affirmatively showed that defendant was not liable based on for conduct alleged); *SFRL Inc. v. Galena State Bank & Trust Co.*, No. 11 C 50277, 2013 WL 497600, *7 (N.D. Ill. Feb. 7, 2013).

### CONCLUSION

For the forgoing reasons, Nikil respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

FENWICK & WEST LLP

Dated: July 27, 2016					By:	*/s/ Bradley T. Meissner*
						Bradley T. Meissner
						Attorneys for Defendant
						NIKIL, INC., a Delaware corporation

15

STEVEN P. MANDELL
smandell@mandellmenkes.com
DANIELLE NICOLE TWAIT
dtwait@mandellmenkes.com
MANDELL MENKES LLC
One North Franklin Street, Suite 3600
Chicago, IL 60606
Telephone: 312.251.1000
Facsimile: 312.251.1010

RODGER R. COLE (admitted *pro hac vice*)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

BRADLEY T. MEISSNER (admitted *pro hac vice*)
bmeissner@fenwick.com
ANNASARA G. PURCELL (admitted *pro hac vice*)
apurcell@fenwick.com
FENWICK &WEST LLP
1191 2nd Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

Attorneys for Defendant
NIKIL, INC., a Delaware corporation

## **CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that on July 27, 2016, a true copy of the foregoing ***Defendant Nikil, Inc.'s Memorandum in Support of Motion to Dismiss Amended Complaint*** was served on all attorneys of record via the United State District Court's CM/ECF system.

    Ari J. Scharg
    ascharg@edelson.com
    EDELSON PC
    350 North LaSalle Street, 13th Floor
    Chicago, Illinois 60654
    *Tel:* (312) 589-6370
    *Fax:* (312) 589-6378

Dated: July 27 2016                                                  */s/ Bradley T. Meissner*