UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW WARCIAK, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NIKIL, INC., a Delaware corporation,<br><br>        Defendant. | Case No.: 16-cv-5731<br><br>Honorable Thomas M. Durkin |

**DEFENDANT NIKIL, INC.'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

In its opening brief,[1] Defendant Nikil, Inc. ("Nikil") demonstrated that Plaintiff's own allegations showing the affirmative user direction required to send an invitational text message to a friend in the user's contact list using Nikil's Down to Lunch mobile app are fatal to Plaintiff's claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Those allegations: (1) establish that Nikil is not the "maker" or "initiator" of the message Plaintiff received as a matter of law; and (2) preclude any showing that the message was sent using an "automatic telephone dialing system" ("ATDS"). Nikil also showed that Plaintiff cannot allege an unfair or deceptive act or practice, as required to state a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA"). Plaintiff's opposition brief wholly fails to rebut those arguments.

*Plaintiff's allegations establish that Nikil does not "make" a call.* Plaintiff concedes that a user must "elect[] to send an invitation to its contacts" before a text message can be sent using Down to Lunch. Opp. at 1.[2] Plaintiff argues that, despite that admission, Nikil is the "maker" of the invitational text messages because Nikil controls the text of the message and because it supposedly "misrepresents" that invitations will not be sent by text message. Neither argument succeeds. First, Plaintiff does not even *mention*, let alone distinguish, the numerous cases holding that where a user must direct the app to send a text message, the app provider does not "make" or "initiate" the message as a matter of law, even where it controls the content and timing of the message. Second, Plaintiff ignores Nikil's showing that the Down to Lunch

---

[1] *See* Defendant Nikil, Inc.'s Memorandum in Support of Motion to Dismiss Amended Complaint [Dkt. No. 22-1] ("Motion").

[2] *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the First Amended Complaint [Dkt. No. 36-1] ("Opp.").

1

invitation flow reproduced in the Amended Complaint refutes Plaintiff's conclusory assertion that Nikil tells its users that invitations will not be delivered by text message.

*Plaintiff's allegations show that Down to Lunch is not an ATDS.* Plaintiff argues that his general, conclusory ATDS allegations meet the minimum requirements for pleading the use of an ATDS, but that argument misses the point. Plaintiff's specific factual allegations show that direct human intervention is required to send each individual text message, and those factual allegations preclude Plaintiff from plausibly alleging that Down to Lunch is an ATDS. Plaintiff's TCPA claim therefore be dismissed for that independent reason.

*Plaintiff's ICFA claim also fails.* Plaintiff argues that the Amended Complaint states an ICFA claim because he has alleged that Nikil engaged in deceptive conduct. Even if Plaintiff's "deception" theory was plausible, it could not salvage Plaintiff's ICFA claim, because he cannot show Nikil intended for Plaintiff, who is not a Down to Lunch user, to rely on any alleged misrepresentation. Plaintiff also fails to address the case law holding that, even in the aggregate, unsolicited invitations do not cause sufficient harm to give rise to an IFCA claim.

The Court should dismiss the Amended Complaint. Because Plaintiff did not respond to Nikil's argument that further amendment would be futile, dismissal should be with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A TCPA CLAIM.

#### A. Plaintiff's Allegations Establish that Down to Lunch Users "Make" or "Initiate" Invitational Text Messages.

As Nikil explained in its opening brief, the 2015 TCPA Order,[3] which is binding on this Court, sets the standard for determining who "makes" or "initiates" an invitational text message sent through a smartphone application for purposes of the TCPA. *See* Motion at 6-8. Under the

---

[3] *See* Declaratory Ruling and Order, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) (Motion, Ex. B).

principles set out in 2015 TCPA Order, an app user, and not the app provider, is considered the maker of an invitational text message where the user must make affirmative choices to direct that an invitation be sent. *See id.*.

Plaintiff does not dispute either of those key points. *See* Opp. at 7 & n.5; *id.* at 11 ("If, as Defendant argues, its 'app user[s] must affirmatively direct that an invitational text message be sent[,]' then Down to Lunch might be correct that it does not initiate the text messages at issue here.") (alterations in original). Instead, Plaintiff argues that: (1) his allegations that Nikil controls the content and timing of the invitational text messages state a plausible claim for relief under the 2015 TCPA Order; (2) notwithstanding the user direction required to send an invitational text message using Down to Lunch, the user does not "make" or "initiate" the message because Nikil falsely tells the user that invitations will not be sent by text message; and (3) whether Nikil makes or initiates the invitational text messages cannot be decided on a motion to dismiss. As explained below, each of those arguments fails.

        **1.**        **Nikil's Alleged Control Over the Content and Timing of Invitational Text Messages Does Not Render it the "Maker" of the Messages.**

Plaintiff argues that Down to Lunch users make "minimal" affirmative choices in sending invitational text messages, and that the "lack of involvement" by users means that Nikil is the "maker" of those messages. *See* Opp. at 11. As support, Plaintiff focuses only on what happens *after* a Down to Lunch user presses the "Invite" button next to a contact's name. *See* Opp. at 11 (arguing that Down to Lunch "determines whether the preselected contact has a telephone number associated with it, determines the content of the text message which is sent from Defendant's own phone number(s), and determines when to send it").

But where, as here, the user must affirmatively direct an invitational text message to be sent, the FCC and courts have unanimously held that the app provider's control over the content

3

of the message or the mechanics of delivering the message does not make it the sender of the message for TCPA purposes. *See* Motion at 9-10; 2015 TCPA Order ¶ 37 (finding that TextMe did not "make" or "initiate" messages, even where it was "clear that TextMe, and not the app user, controls the content of the invitational text message"); *Cour v. Life360, Inc.*, No. 16-cv-00805-TEH, 2016 WL 4039279, *1, 4 (N.D. Cal. July 28, 2016) (dismissing TCPA claim on ground that app users initiated text message invitations, despite allegations that defendant controlled content and timing of text message); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, *3-4 (N.D. Cal. Aug. 24, 2015) (holding same).

Plaintiff simply ignores that body of authority. In fact, although Plaintiff's brief contains a heading prominently declaring, "The Cases Cited by Defendant Are Inapposite" (Opp. at 12), Plaintiff's brief does not even mention *any* of the key cases discussed in Nikil's opening brief holding that an app provider did not "make" or "initiate" invitational text messages sent using its app—*i.e.*, *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015), *Huricks*, and *Wright v. Lyft, Inc.*, No. 2:14-00421-MJP (W.D. Wash. Apr. 15, 2016) (Motion, Ex. C).[4] And while Plaintiff attempts to distinguish *Cour v. Life360* (a case decided after Nikil filed its motion), he fails to note that his allegations about Nikil's control over the invitational text messages are *identical* to the allegations rejected in *Cour*. *Compare* AC ¶ 26 ("Defendant has full control over the content of the text message, whether a text message will be sent, and—if a text message is to be sent—when, subsequent to the user pressing the "Invite" button, it will be sent."), *with Cour*, 2016 WL 4039279 at *1 ("Life360 'has full control over the content of the text message, whether a text message will be sent and, and [sic] – if a I [sic] text

---

[4] Plaintiff instead attempts to distinguish only *Luna v. Shac*, 122 F. Supp. 3d 936 (N.D. Cal. 2015). *See* Opp. at 12-13. But Plaintiff's purported distinction of *Luna* is irrelevant, as Nikil did not cite *Luna* in arguing that Nikil did not "make" the text message Plaintiff received.

4

message is to be sent – when, subsequent to the user pressing the 'invite' button, it will be sent.'" (quoting complaint) (alterations in original)).

Plaintiff relies heavily on *Izsak v. Draftkings, Inc.*, No. 14-cv-07952, 2016 WL 3227299 (N.D. Ill. June 13, 2016), for the proposition that allegations about the "generic nature" of a text message can be sufficient to state a claim. *See* Opp. at 9, 13. But *Izsak* is wholly inapposite. The *Izsak* court did ***not*** address or rule on whether the defendant made or initiated the text message at issue in that case, nor did the *Izsak* court purport to interpret or apply the 2015 TCPA Order. Rather, the court addressed *only* whether the plaintiff's allegations were sufficient to plausibly suggest that he received a message sent using an ATDS. *See id*. at *2-5. For that reason alone, *Izsak* does not support Plaintiff's argument.

Moreover, Plaintiff's assertion that the allegations in *Izsak* were "nearly identical" to Plaintiff's allegations in this case is demonstrably false. *See* Opp. at 13. In *Izsak*, the plaintiff alleged only that (1) he received an allegedly generic text message encouraging him to visit defendant's website; (2) he called the number from which he received the message and heard an automated message from defendant; and (3) defendant sent the same message to thousands of people. *See* Class Action Complaint, *Izsak v. Draftkings, Inc.*, No. 14-cv-07952 (N.D. Ill. Oct. 11, 2014) (Ex. A); *Izsak*, 2016 WL 3227299 at *3. Here, by contrast, Plaintiff's Amended Complaint details the steps that a Down to Lunch user must take to send an invitational text message, including pressing a large "Invite" button next to a contact's name underneath a header that says "invite contacts!," and it also includes screenshots of that invitation flow. *See* AC ¶¶ 16-22. Those affirmative factual allegations—which were ***not*** present in *Izsak*—establish that Down to Lunch users "make" or "initiate" text message invitations sent using the app and defeat Plaintiff's TCPA claim. *See* Motion at 8-12; *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A

5

plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

### 2. Plaintiff's Conclusory Assertion that Nikil "Deceives" Down to Lunch Users Fails.

Plaintiff next asserts that Nikil "makes" or "initiates" Down to Lunch invitational text messages because Nikil supposedly misrepresents to users that the invitations will not be sent by text message. *See, e.g.*, Opp. at 1 ("Defendant affirmatively misrepresents that such an invitation will not result in the sending of text messages."); *id.* at 11.

Plaintiff's argument fails for multiple reasons. First, as Plaintiff appears to concede, that Down to Lunch does not expressly state that an invitation will be sent by text message is itself insufficient to state a claim. In *Cour* the court unequivocally rejected the argument that an app maker's failure to specify that invitations will be sent by text message renders the app maker liable under the TCPA:

> This Court agrees that ***it makes no difference, for purposes of determining who "makes" a call under the TCPA, whether an application informs the user how invitations will be sent.*** The goal of the TCPA is to prevent invasion of privacy, and the person who chooses to send an unwanted invitation is responsible for invading the recipient's privacy even if that person does not know how the invitation will be sent.

2016 WL 4039279 at *4 (emphasis added) (internal citation omitted); *see also Wright*, slip op. at 5 (rejecting argument that app provider should be considered maker of invitational messages because it "did not tell users whether an 'invite' would be sent by U.S. Mail, a personal telephone call, or some other method"; finding plaintiff's argument "of questionable materiality" and "definitely implausible").

Plaintiff attempts to distinguish *Cour* by asserting that the app users in *Cour* "knew that their use of the app would cause their contacts to receive unsolicited communications." Opp. at 9. But that is no distinction at all, as Plaintiff concedes that a Down to Lunch user also knows

6

that he will be sending the selected contact a communication inviting them to join Down to Lunch. *See, e.g.*, Opp. at 1 (admitting that user "elects to send an invitation").

Second, as explained in Nikil's opening brief, the well-pleaded allegations of Plaintiff's Amended Complaint do not plausibly suggest that that Nikil "deceives" users or "misrepresents" that Down to Lunch invitations will not be delivered by text message. *See* Motion at 11-12. The included screenshots make clear that the phrase "will not text anyone"—which appears in parentheses below the "Find Friends" button, and does ***not*** appear anywhere on the screen permitting users to send invitations to selected contacts—signifies ***only*** that enabling the "Find Friends" function (which shows the user which of their contacts are already Down to Lunch users) will not result in the sending of text messages. *See* AC ¶ 16 & fig. 1; Motion at 11-12. It neither states nor suggests that later user-directed invitations will not be delivered by text message. Indeed, Plaintiff's own allegations show that the user then has to go through seven additional steps (including confirmation dialogs, button presses, and text input) involving multiple other aspects of the sign-up process, such as enabling notifications and entering their username, before they even arrive at the optional invite contacts screen. AC ¶¶ 16-21. Plaintiff fails entirely to address those facts, and Plaintiff's contrived interpretation is simply implausible. *See Mid-Am. Reg'l Bargaining Ass'n v. Will Cty. Carpenters Dist. Council*, 675 F.2d 881, 883 (7th Cir. 1982) (court need not draw "unreasonable inferences" in plaintiff's favor on motion to dismiss); *Marconi v. Ind. Mun. Power Agency, ISC, Inc.*, No. 14 C 7291, 2016 WL 4530307, *7 (N.D. Ill. Aug. 30, 2016) (rejecting "strained inferences" that would be required for plaintiffs to

state a claim). Moreover, Plaintiff offers no plausible alternative explanation for how users would believe the invitations would be sent, if not through text message.[5]

### 3. The Court May Determine that Nikil Does Not Make or Initiate Invitational Text Messages on a Motion to Dismiss.

Finally, in a last-ditch effort to avoid dismissal, Plaintiff suggests that the issue of who "makes" or "initiates" an invitational text message is a "factual dispute" that cannot be determined on a motion to dismiss. *See* Opp. at 10. But Plaintiff ignores the fact that, in the 14 months since the 2015 TCPA Order was issued, at least three district courts have reached the opposite conclusion. *See McKenna*, 2015 WL 5264750 at *3-5; *Cour*, 2016 WL 4039279 at *4; *Wright*, slip op. at 4. In each of those cases, the court dismissed a purported TCPA class action against an app provider on a Rule 12(b)(6) motion where, as here, the plaintiff's allegations and the judicially noticeable facts demonstrated that the app's users, and not the app provider, were the senders of invitational text messages under the 2015 TCPA Order. *E.g.*, *Wright*, slip op. at 5-6 ("[T]he FCC's TextMe ruling resolves whether this form of user-generated invitational text message falls within the restrictions of the TCPA. The answer is 'no.' Defendant is entitled to a dismissal of the TCPA claim and the Court will so order."); *Cour*, 2016 WL 4039279 at *3-5.

Because Plaintiff's well-pleaded allegations establish that the Down to Lunch user is the sender of an invitational text message sent through the app, Plaintiff cannot state an actionable TCPA claim against Nikil, and dismissal is therefore appropriate.

---

[5] Plaintiff's Amended Complaint alleged that Down to Lunch users were led to believe that they would only be sending in-app "friend requests" to existing Down to Lunch users,rather than invitations to their telephone contacts. AC ¶¶ 5, 27. In its opening brief, Nikil explained that Plaintiff alleged no *facts* to support that conclusory assertion, and that Plaintiff's theory was implausible in light of the invitation flow screenshots. *See* Motion at 10-11. Plaintiff did not respond to that argument, and Plaintiff does not repeat his "friend request" theory in his opposition brief. Accordingly, Plaintiff has abandoned that theory. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver); *Noble Roman's, Inc. v. Union Valley Tiger Mart*, No. 1:14-cv-00919-TWP-TAB, 2015 WL 4876074, *3 (S.D. Ind. Aug. 14, 2015) (same).

8

### B. Plaintiff's Allegations Establish that Text Messages Sent through Down to Lunch Are Not Sent Using an ATDS.

#### 1. Plaintiff's Conclusory ATDS Allegations Are Belied By the Specific Allegations of the Amended Complaint.

Plaintiff spends nearly two full pages of his opposition brief arguing that his conclusory allegations directed at the ATDS element of his TCPA claim—*e.g.*, that Nikil uses equipment that "is capable of making numerous text message calls simultaneously" and dials numbers "en masse, in an automated fashion without human intervention" (AC ¶ 32)—are sufficiently pleaded because they "put Defendant on notice of the nature of Plaintiff's claims." Opp. at 14-16.

Plaintiff is correct that some courts have allowed plaintiffs to meet their burden of pleading the use of an ATDS through circumstantial factual allegations about the call or message that they received. But those cases do not help Plaintiff, because Plaintiff's specific factual allegations about the Down to Lunch invitation flow affirmatively undercut any inference that the message Plaintiff received was sent using an ATDS. *See* Motion at 13. In other words, Plaintiff's general allegations that Down to Lunch sends text messages "without human intervention" are squarely contradicted by the specific allegations (and screenshots) showing that an invitational text message can be sent *only* in response to a user pressing "Invite," and then *only* to the telephone number of the specific contact selected. Regardless of whether general allegations *could be* sufficient to allege use of an ATDS, such allegations fail when they are contradicted by a plaintiff's specific factual allegations. *E.g.*, *Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345, *4 (N.D. Ill. June 29, 2015) (court need not credit allegations that contradict documents attached to complaint); *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to

9

ignore specific factual details of the pleading in favor of general or conclusory allegations.").[6]

### 2. Plaintiff's Allegations Show that Human Intervention Is Required to Send a Text Message Using Down to Lunch.

Plaintiff concedes that equipment "is not an autodialer unless it has the capacity to dial numbers without human intervention." (Opp. at 7). But Plaintiff contends that the human intervention required to send texts through Down to Lunch should not defeat his claim because it is limited to "loading a list of numbers into a computer system," which Plaintiff claims is "not the sort of human intervention necessary to avoid liability under the TCPA." Opp. at 17. Plaintiff is wrong on both counts.

First, Plaintiff's suggestion that Down to Lunch users merely "load[] a list of numbers into a computer system" is baseless. As Plaintiff acknowledges, an invitational text can be sent using Down to Lunch only where the user "elects to send an invitation." Opp. at 1. In other words, invitations are sent only after the user affirmatively presses "Invite" next to a particular contact's name. Plaintiff's argument that users are not specifically informed about the means through which the text message will be sent does not in any way diminish the admitted fact that direct human action is required for each and every text message.

Second, courts have repeatedly found this very level of human intervention sufficient to defeat a plaintiff's claim that a call was made using an ATDS. *See, e.g.*, *McKenna*, 2015 WL 5364750 at *3 (holding that plaintiff could not allege use of ATDS where allegations made it "undeniable" that app user's actions were required to set alleged automated processes "in

---

[6] For that reason, *Izsak* also does not support Plaintiff's argument that he has sufficiently alleged the use of an ATDS. As noted above, in *Izsak*, unlike here, the plaintiff's complaint did not include affirmative allegations demonstrating that human intervention was required to send the text message at issue; the *Izsak* court held only that the plaintiff's circumstantial allegations plausibly suggested the use of an ATDS, even though the defendant posited an alternate explanation. *Izsak*, 2016 WL 3227299 at *3-4. Here Plaintiff's Amended Complaint itself makes clear that direct human intervention is required for every text sent using Down to Lunch.

motion"); *Derby v. AOL, Inc.*, No. 5:15-cv-00452-RMW, 2015 WL 5316403, *5 (N.D. Cal. Sept. 11, 2015) (rejecting ATDS allegations where alleged automated messages were "triggered by some form of human action"). Plaintiff fails to distinguish the many cases finding that this level of human intervention precludes any showing that a message was sent using an ATDS.

## II. PLAINTIFF FAILS TO STATE AN ICFA CLAIM.

Plaintiff contends that even if his TCPA claim fails, he has stated a claim under the ICFA because he has alleged that Nikil deceives its users by misrepresenting that Down to Lunch invitations will not be delivered by text message, and because he has alleged that unwanted text messages cause "substantial injury" to consumers. *See* Opp. at 17-18. Both arguments fail.

Plaintiff's theory that Nikil "misrepresents" to its users that invitations will not be sent by text message does not bolster Plaintiff's ICFA claim for the same reasons discussed above—*i.e.*, Plaintiff's theory is squarely contradicted by the Down to Lunch invitation flow reproduced in the Amended Complaint. *See* Section I.A.2, *supra*. But even if Plaintiff could plausibly allege that Nikil made deceptive statements to Down to Lunch users, that theory would not save Plaintiff's ICFA claim. An ICFA plaintiff must allege that the defendant *intended that the plaintiff rely* on the misrepresentation. *See, e.g.*, *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 204 F. Supp. 2d 1120, 1124-25 (N.D. Ill. 2002) (investor plaintiff could not allege ICFA claim based on alleged misrepresentations in valuation letter directed to specific addressees because plaintiff could not show that defendant intended plaintiff to rely on letter). Here, Plaintiff contends only that Nikil made supposed misrepresentations to Down to Lunch *users*. He does not, and cannot, plausibly claim that Nikil intended for the non-user *recipient* of an invitational text message to rely on any statement.

In addition, Plaintiff wholly fails to address the case law holding that the receipt of an unsolicited message does not constitute "substantial injury." *See* Motion at 14-15. Indeed, the very case that Plaintiff cites to argue that the court must consider the aggregate impact of an allegedly unfair practice on consumers concluded that, even considering the aggregate impact of unsolicited faxes on thousands of potential class members, that impact did not amount to "substantial injury" for purposes of the ICFA. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 617 (N.D. Ill. 2009) (dismissing ICFA claim because aggregate harm to thousands of potential class members from receipt of unsolicited communications was not "substantial injury").

### III. DISMISSAL SHOULD BE WITH PREJUDICE.

As Nikil noted in its opening brief, because Plaintiff's own allegations demonstrate that Plaintiff is not entitled to any relief, further amendment would be futile. *See Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-cv-07388, 2013 WL 4552866, *5 (N.D. Ill. Aug. 27, 2013) (denying leave to amend where complaint affirmatively showed that defendant was not liable based on for conduct alleged). Plaintiff has neither requested leave to amend nor responded to that argument, and the Court should therefore dismiss the Amended Complaint with prejudice.

### CONCLUSION

For the forgoing reasons, Nikil respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

FENWICK & WEST LLP

Dated: September 23, 2016         By: */s/ Bradley T. Meissner*
                                  Bradley T. Meissner
                                  Attorneys for Defendant
                                  NIKIL, INC., a Delaware corporation

12

STEVEN P. MANDELL
smandell@mandellmenkes.com
DANIELLE N. TWAIT
dtwait@mandellmenkes.com
MANDELL MENKES LLC
One North Franklin Street, Suite 3600
Chicago, IL 60606
Telephone: 312.251.1000
Facsimile: 312.251.1010

RODGER R. COLE (admitted *pro hac vice*)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

BRADLEY T. MEISSNER (admitted *pro hac vice*)
bmeissner@fenwick.com
ANNASARA G. PURCELL (admitted *pro hac vice*)
apurcell@fenwick.com
FENWICK &WEST LLP
1191 2nd Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

Attorneys for Defendant
NIKIL, INC., a Delaware corporation

## **CERTIFICATE OF SERVICE**

  The undersigned, an attorney, hereby certifies that on September 23, 2016, a true copy of the foregoing ***Defendant Nikil, Inc.'s Reply Memorandum in Support of Motion to Dismiss Amended Complaint*** was served on all attorneys of record via the United States District Court's CM/ECF system.

  Ari J. Scharg
  ascharg@edelson.com
  Benjamin S. Thomassen
  bthomassen@edelson.com
  EDELSON PC
  350 North LaSalle Street, 13th Floor
  Chicago, Illinois 60654
  *Tel:* (312) 589-6370
  *Fax:* (312) 589-6378


Dated: September 23, 2016         */s/ Bradley T. Meissner*