# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MATTHEW WARCIAK, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 16 C 5731 |
| v. | Judge Thomas M. Durkin |
| NIKIL, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Matthew Warciak alleges that Nikil, Inc. sent him a text message without his permission in violation of the Telephone Consumer Protection Act (the "TCPA"). He also alleges that the sending of the text violated the Illinois Consumer Fraud Act (the "ICFA"). R. 20. Nikil has filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 22. For the following reasons, that motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Nikil developed a social network and related mobile application (or "app") called "Down to Lunch" (the "App"). R. 20 ¶ 15. The App's purpose is to "connect[] friends to allow them to easily and spontaneously meet in person for events and activities, such as meeting for lunch." *Id.*

Warciak alleges that he received a text message from Down to Lunch stating that one of Warciak's friends had invited him to join Down to Lunch (an "invitation text message"). *Id.* ¶ 36. He alleges that Down to Lunch users are not aware that by using the App to send invitations they cause a text message to be sent to recipients like Warciak, and that Nikil was actually responsible for generating the text message. *Id.* ¶ 26.

2

**Analysis**

**I.   TCPA Claim**

TCPA § 227(b)(1)(A) prohibits an individual from using an automatic telephone dialing system "to make any call" to a cell phone, other than for emergency purposes or with the prior consent of the called party. 47 U.S.C. § 227(b)(1)(A). The FCC's implementing rule interprets the statutory phrase "make any call" to mean "initiate any telephone call." 47 C.F.R. § 64.1200(a)(1). The FCC has also ruled that these requirements apply to text messages. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961 ¶ 27 (2015) (the "FCC Order"). In cases addressing the applicability of TCPA § 227 to invitation text messages, the FCC provided the following guidance for determining who "initiated" a text:

> we look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it . . . .

30 F.C.C.R. ¶ 30.[1] Courts analyzing this issue in the wake of the FCC Order have taken their cue from the FCC's application of this standard to the particular cases at issue in the Order. With respect to an app called "TextMe," the FCC found that the

---

[1] The Supreme Court and the Seventh Circuit have yet to address the question of whether a text sent through an app is "initiated" by the user of the app or the app itself, so the FCC Order is binding on this Court under the Hobbs Act, 28 U.S.C. § 2342(1). *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010).

> affirmative choices by the app user lead us to conclude that the app user and not TextMe is the maker of the invitational text message. While we agree with commenters that TextMe's control of the content of the invitational text message is a reason for concern, and take into account the goals and purposes of the TCPA, we conclude that the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call.

*Id.* ¶ 37. By contrast, with respect to another app called "Glide," the FCC found that

> Glide automatically sends invitational texts of its own choosing to every contact in the app user's contact list with little or no obvious control by the user. In this scenario, the app user plays no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them.

*Id.* ¶ 35.

The relevant alleged facts about the Down to Lunch app are as follows. The first screen that appears in the Down to Lunch app asks the user if they would like to "Find Friends," and notes that choosing this option "will not text anyone." R. 20 ¶ 16 (fig. 1). If the user elects to "find friends," the app seeks permission to access the user's contacts, and if permitted, lists the user's contacts who are already using Down to Lunch. *Id.* ¶¶ 17-18 (figs. 2-3). Eventually, the user is confronted with a screen that suggests the user "get more friends to eat with!" *Id.* ¶ 21 (fig. 7). This screen informs the user that if he or she gets a "friend" to "join" Down to Lunch the user will receive "50 points," which can then be used to acquire stickers (for 2,000 points) or a t-shirt (for 5,000 points). *Id.* At the bottom of this screen there is also an invitation to "invite contacts," with the name of one of the user's contacts listed above two large button options, "Skip" and "Invite." *Id.* If the user clicks the "Invite"

button, the "contact" that was listed on the screen receives a text from a Down to Lunch phone number that is composed by Down to Lunch. Warciak alleges he received the following text:

> Hey Matt Warciak! [Redacted Contact Name] personally invited you to the Down to Lunch app so you both can hang out together! The app shows you which friends are free to eat, study, or drink! Join [redacted] and 14 other friends and get it now on the App Store or here [hyperlink to Down to Lunch website].

*Id.* ¶ 24 (fig. 9).

The facts here are analogous to the "TextMe" app and distinguishable from the "Glide" app analyzed in the FCC Order. Like the TextMe app, Warciak has alleged that users must take several "affirmative steps" before generating a text message through Down to Lunch. Most important, users must affirmatively click a button to invite a particular contact, and only then is a text message sent to that particular contact, and that particular contact alone. Unlike the Glide app, Down to Lunch does not "automatically" send text messages to every one of the user's contacts. The Down to Lunch user, not the app itself, decides whether any of the user's contacts receive a text message generated by and through Down to Lunch. Since the user decides whether the text gets sent, Nikil cannot plausibly be said to have "initiated" the text through Down to Lunch. Thus, Warciak has failed to state a claim that Nikil violated the TCPA.

As Nikil points out, several district courts have similarly interpreted the FCC Order to support dismissal of TCPA claims about mobile application text invitations at the pleading stage. *See Cour v. Life360, Inc.*, 2016 WL 4039279, at *3-4 (N.D. Cal.

5

July 28, 2016) *(*"Here, by contrast, Life360 users choose which of their contacts should receive an invitation and then press an 'invite' button before invitations are sent. Life360 is therefore much more similar to TextMe."); *Wright v. Lyft, Inc.*, 2016 WL 7971290, at *2 (W.D. Wash. Apr. 15, 2016) ("[The FCC Order] makes it clear: 'invitational' messages sent at the behest of existing users of an app or system do not fall within the ambit of the TCPA."); *McKenna v. WhisperText*, 2015 WL 5264750, *3 (N.D. Cal. Sept. 9, 2015) ("[I]t is undeniable from [the plaintiff's] previous allegations that the human intervention of a Whisper App user is necessary to [send the text invitation]."); *Huricks v. Shopkick, Inc.*, 2015 WL 5013299, *3 (N.D. Cal. Aug. 24, 2015) ("The Court finds the steps the user must have taken to cause the Shopkick invitational text messages to be sent are indistinguishable in all material respects from the steps a user of the TextMe app must take to cause the TextMe invitational texts to be sent, which steps, as set forth above, are tapping a button stating 'invite your friends,' choosing which contacts to invite, and choosing to send the text messages by tapping another button.").

Without meaningfully distinguishing these cases, Warciak relies on a recent decision in another case he filed in this district, in which Judge Kennelly denied a motion to dismiss a TCPA claim based on texts received through a social network app. *See Warciak v. One, Inc.*, 2016 WL 7374278 (N.D. Ill. Dec. 20, 2016). But Judge Kennelly distinguished the app at issue in *One*:

> One's attempt to align the [app at issue] with [the apps in the cases cited above] is unsuccessful, as One's

6

> application never indicates to users that they are sending invitations. The users cannot be the initiators of these text messages for purposes of the TCPA if, as Warciak has alleged, the users were unaware that their actions would result in invitations.

*Id.* at \*4. Here, by contrast, Warciak's allegations demonstrate that Down to Lunch users know their actions initiated invitations. Far from supporting Warciak's claims in this case, Judge Kennelly's decision in *One* undermines them.

Warciak's allegations make it clear that users of the Down to Lunch app initiate the *invitations*. But Warciak argues that, under the totality of the circumstances, "invitations" should be distinguished from "texts," because the App "never informs the user that a text message is being sent, and affirmatively misrepresents that it won't happen." R. 36-1 at 11 (referring to the "Find Friends" screen which says that choosing this option "will not text anyone." R. 20 ¶ 16 (fig. 1)). Warciak argues that he has plausibly alleged that Nikil and its App are the initiator of the *texts* (if not the invitations) because the App "determines whether the preselected contact has a telephone number associated with it, determines the content of the text message which is sent from Defendant's own phone number(s), and determines when to send it." R. 36-1 at 11. But the fact that any number of technological processes must occur for a person to make a call or send a text—processes over which the app user has no control—does not distinguish Down to Lunch from a normal person-to-person text. All telephone or smart phone users are dependent upon telecommunications carriers to provide the mechanism for texts or phone calls to be sent and received. But those processes are irrelevant to whether a

7

person has "initiated" the chain of technological events that results in a contact receiving a text or phone call. *See* 30 F.C.C.R. ¶ 37 ("TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call, but merely has some role, however minor, in the causal chain that results in the making of a telephone call.").[2]

To the extent Warciak means to argue that Down to Lunch users do not know that the "invitation" will be sent in the form of a text, as opposed to an email or letter, this is beside the point. Whether Down to Lunch users think their invitations are being communicated by texts, emails, or letters, could only possibly be relevant if the users themselves were the intended defendants. If Warciak intended to sue the users, he might be right that he would need to prove both that the users

---

[2]     Warciak also attempts to support his case by with the following analogy:

> Suppose that instead of a text message, pressing the 'Invite' button meant that the invited contact received a voice phone call where a recorded voice encouraged them to join Down to Lunch. It wouldn't make sense to suggest that the app user made the hypothetical voice call where she didn't dial the number, wasn't on the line, and didn't even know that clicking the invite button was going to make Down to Lunch ring her friends at random.

R. 36-1 at 12. Warciak uses the inapposite comparison of voice and text technologies to create a red herring. No sender of a text is ever "on the line" in a manner analogous to a phone call. Yet the TCPA still applies to text messages.

Furthermore, Warciak's contention that Down to Lunch users do not "know that clicking the invite button was going to make Down to Lunch [contact their] friends at random," is an inaccurate characterization of Warciak's own allegations. He has alleged that Down to Lunch users are presented with a screen listing one particular contact name with the option to "invite" that contact to "join" Down to Lunch. There is nothing random about the process. Rather, according to Warciak's allegations, Down to Lunch users know precisely who they are inviting to join the network and when they are doing so.

"initiated" the invitation, and that the users did so knowing that the invitation was a text message actionable under the TCPA. But since the users are not the intended defendants, it is irrelevant that they might not have known that their invitations were being communicated by texts, as opposed to other forms of communications, such that they might face liability under the TPCA. Rather, the point of determining that the users are the "initiators" is to demonstrate that *Nikil is not* the initiator, and so cannot be liable under the TCPA. As discussed, Warciak's allegations demonstrate that the users initiated the invitations, so Nikil cannot have initiated the texts; rather, Nikil supplied the means for the user to initiate a text message. Therefore, Warciak's TCPA claim is dismissed.[3]

## II. ICFA Claim

The ICFA prohibits

> unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon [any such action] . . . .

815 ILCS 505/2. The Illinois Supreme Court has held that "[t]he elements of a claim under the [ICFA] are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of

---

[3] As an aside, the Court finds it highly implausible that Down to Lunch users do not know that their invitations will be communicated by text, as it is common knowledge that text messages are the primary means of communication for mobile smart phone apps. *See Wright*, 2016 WL 7971290, at *3 (the plaintiff's contention that the invitation could have been sent by "U.S. Mail" was "definitely implausible").

9

the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Additionally, a plaintiff must show that he or she suffered "actual damage" as a result of the defendant's violation of the act. 815 ILCS 505/10a. Only "purely economic injuries" are cognizable under the ICFA. *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 1st Dist. 2010).

Warciak argues that he has plausibly alleged that Nikil's statement that the Down to Lunch "find friends" function "will not text anyone" was deceptive, because a text was eventually sent. *See* R. 36-1 at 18. But as discussed, this screen clearly refers to the "find friends" function in particular, and Warciak does not allege that the "find friends" function caused a text to be sent. The screen following the "find friends" screen proposed that the user "invite" friends to "join" Down to Lunch, and choosing "invite" is what caused the text being sent. Warciak does not claim that there is anything deceptive about this screen. At that point, Warciak's allegations make clear, the user understands that by clicking "invite" his or her friend will receive an invitation. No reasonable person would impute the "no text will be sent" statement from the "find friends" screen to likewise apply to the screen that provides the means for the user to affirmatively invite one of their contacts to join Down to Lunch. Thus, Warciak has failed to allege a deceptive statement that can satisfy the ICFA.

Even if Nikil's statement is deceptive for purposes of the ICFA (which it is not), Warciak has failed to allege actual damage. Warciak alleges that the class


suffered injuries in the form of invasions of privacy and violations of their statutory rights, the monies paid to receive Defendant's unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription services (i.e., the value of such equipment and services is higher when unencumbered by repeated and harassing text message calls), the amount of time lost answering and fielding the unwanted telemarketing text messages, the wear and tear on their telephone equipment, the loss of battery (which becomes diminished with each incoming phone call), the loss of battery life (which has a finite number of charging cycles), and the electricity costs required to recharge their cellular phones.

R. 20 ¶ 35. Only the cost of a receiving a text message and loss of battery life can be described as "economic injuries." But although Warciak alleges that *the class* suffered these injuries as a whole, he does not allege he suffered these particular injuries *himself*. Rather, he alleges that he was only injured in that the "intrusive text messages adversely affected [his] right to privacy." *Id.* ¶ 38. This is not an economic injury cognizable under the ICFA. So even if Warciak had sufficiently alleged a deceptive statement, his claim would fail because he has not alleged economic damages.

## Conclusion

For the foregoing reasons, Nikil's motion, R. 22, is granted, and Warciak's claims are dismissed without prejudice. Should Warciak believe he can, consistent with Federal Rule of Civil Procedure 11, cure the deficiencies identified in this opinion, he may file a motion for leave to amend by April 21, 2017. The motion must attach a proposed amended complaint, and be supported by a brief of no more than five pages explaining how the proposed amendments address the Court's analysis in

this opinion. Nikil should not respond to any such motion unless the Court so orders. If Warciak does not file such a motion by April 21, 2017, this dismissal will be with prejudice.

<div style="text-align: right;">
ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge
</div>

Dated: March 23, 2017